UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JULIE KNIGHT,

                              Plaintiff

            -v-                                          5:19-CV-712

COUNTY OF CAYUGA; CAYUGA COUNTY
HEALTH DEPARTMENT; NANCY PURDY,
Individually and in her capacity as an employee
of Cayuga County; KATHLEEN CUDDY,
Individually and in her capacity as an employee
of Cayuga County; and MICHAEL RUSSELL,
Individually and in his capacity as an employee
of Cayuga County,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

OFFICE OF JARROD W. SMITH                        JARROD W. SMITH, ESQ.
Attorneys for Plaintiff
11 South Main Street
P.O. Box 173
Jordan, New York, 13080

OFFICE OF FRANK W. MILLER                        CHARLES C. SPAGNOLI, ESQ.
Attorneys for Defendants
6575 Kirkville Road
East Syracuse, NY 13057


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I.    INTRODUCTION

        For approximately eighteen years, plaintiff Julie Knight ("Knight" or "plaintiff") worked

for defendant Cayuga County Health Department ("the department"), and by extension the

County of Cayuga ("Cayuga" or "the county").  For much of that time, but especially beginning

in 2012, plaintiff suffered from severe anxiety and post-traumatic stress disorder.  Plaintiff contends that her supervisors, defendants Kathleen Cuddy ("Cuddy") and Nancy Purdy ("Purdy") exacerbated these issues by disregarding her complaints of a hostile work environment and by interfering with her leave under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-54 ("FMLA").  She also alleges that defendant Michael Russell violated her rights under the Health Insurance Portability and Accountability Act, 42 U.S.C. §§ 1320d-1320d-9 ("HIPAA") by disclosing her protected medical information.

On June 15, 2019, plaintiff brought this complaint.  Plaintiff raises six concrete federal claims:  (1) retaliation for exercising her First Amendment right to free speech under 42 U.S.C. § 1983 ("§ 1983"); (2) a violation of her right to due process under the Fourteenth Amendment through § 1983; (3) a violation of her Eighth Amendment right to be free from cruel and unusual punishment under § 1983; (4) violations of her HIPAA rights; (5) violations of her rights under FMLA; and (6) violations of her rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213 ("ADA").   Plaintiff also raises five claims under New York common and statutory law:  (1) false imprisonment; (2) assault and battery; (3) intentional infliction of emotional distress; (4) retaliation against plaintiff's protected activity as a whistleblower; and (5) general negligence including negligent infliction of emotional distress.  Plaintiff also makes references in passing to libel, slander, equal protection, and negligent hiring, retention, and training.

Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for a lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim.  They have also moved under Rule 12(f) to strike allegations in the complaint that Knight observed Cuddy in an extramarital liaison.  Knight has cross-moved for leave to

amend her complaint under Rule 15(a)(2).  In their reply to plaintiff's cross-motion, defendants conceded that their arguments regarding this Court's lack of personal jurisdiction and the purported lack of service of process were both nullified by plaintiff's response.

## II.  **BACKGROUND**

For approximately eighteen years before January 28, 2019, Knight worked for the department in the cancer services program.[1]  Dkt. 1, ¶ 14-15.  In March of 2009, Deanna Ryan ("Ryan"), along with a few of plaintiff's other coworkers, accused plaintiff of creating a hostile work environment.  *Id.* ¶ 16.  Although the complaint was dismissed, the accusation had a deleterious effect on plaintiff's mental wellbeing.  *Id.*  But that complaint was only the first stone cast at plaintiff by her coworkers, including not speaking to her, laughing at her, and building a wall to separate her from the rest of the office.  *Id.* ¶¶ 17-20.  These slights continued for the remainder of plaintiff's time at the department.  *Id.*

In January of 2012, Knight and her husband were going through a divorce. Dkt. 1, ¶ 21.  The divorce, combined with the stress of her work environment, worsened plaintiff's anxiety and post-traumatic stress disorder.  *Id.* ¶¶ 23, 25.  In July of 2012, plaintiff asked to speak with Cuddy concerning her issues in the workplace, but she was so anxious that they needed to meet at a local coffee shop rather than in the office.  *Id.* ¶ 23.

Finally, in 2013, Knight's mental health deteriorated to such an extent that she would suffer from debilitating panic attacks.  Dkt. 1, ¶ 25.  These panic attacks would occasionally force plaintiff to leave work, and on occasion leave her bedridden for days.  *Id.*  As a result, plaintiff became entitled to leave under the FMLA.  *Id.*

Between 2013 and 2017, Knight's relationship with her coworkers continued to fester, and Ryan issued another unfounded complaint against her.  Dkt. 1, ¶¶ 26-27.  In July of

---

[1] The facts are taken from plaintiff's complaint, and its allegations are assumed to be true for the purposes of a Rule 12(b)(6) motion.  *Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61, 61 (2d Cir. 2012).

2017, Cuddy withheld plaintiff's FMLA re-certification materials from human resources. *Id.* ¶ 29. In response, plaintiff's union, the Civil Service Employees of America ("the union") threatened suit. *Id.* Although this defendant disclosed the materials, the union advised plaintiff to file a lawsuit concerning the bullying taking place in her workplace. *Id.* ¶¶ 29-30.

In October of 2017, Cuddy placed Knight on time abuse and informed her that she would not count the time off that she was taking as FMLA time. Dkt. 1, ¶ 31. In the winter of 2018, a Cayuga employee approached plaintiff about time abuse and her alleged misuse of FMLA. *Id.* ¶ 33. According to that employee, defendant Russell, who worked in human resources, had informed her of these violations, contrary to HIPAA's mandate. *Id.* ¶¶ 33, 57.

During May of 2018, Knight's relationship with the department began to deteriorate rapidly. On May 16, 2018, Purdy informed plaintiff that she would be forced to relocate her office near Ryan's. Dkt. 1, ¶ 34. This news triggered plaintiff's anxiety, and she was forced to take FMLA leave the next day, May 17. *Id.* ¶¶ 35-36. Plaintiff spoke to Cuddy on May 18 and described how severely the potential move had affected her. *Id.* ¶ 37. Cuddy responded that there had been no formal decision yet. *Id.* On May 28, 2018, Purdy, at Cuddy's suggestion, denied plaintiff's FMLA time for May 17, because employees stated that plaintiff did not seem upset when she left on May 16. *Id.* ¶ 38.

On May 31, 2018, Knight met with the department's human resources and the union. Dkt. 1, ¶ 39. At the meeting, she presented a doctor's note clarifying that the unexcused absence on May 17, 2018 was caused by her anxiety and post-traumatic stress disorder. *See id.* Plaintiff also explained that Ryan exacerbated her symptoms to such an extent that she could not work near her. *See id.* ¶ 40. Nevertheless, on June 21, 2018, Purdy called plaintiff into her office. *Id.* ¶ 43. She confirmed plaintiff would be moved near Ryan. *Id.* This news caused plaintiff to suffer a panic attack. *Id.* Plaintiff requested to leave her office

several times but was refused. *Id.* Instead, this defendant blocked her in the office, and prevented plaintiff from leaving. *Id.*

Purdy then twice grabbed Knight's arms, bruising her. Dkt. 1, ¶ 44. Plaintiff asked her to let go both times. *Id.* Plaintiff's husband then called, and she told him that this defendant had refused to let her leave the office. *Id.* At this point, this defendant told plaintiff that if plaintiff left work, she would call the police and an ambulance. *Id.* Instead, she ordered plaintiff to call her husband and have her pick her up. *Id.* Plaintiff filed a workplace violence claim against this defendant on August 14, 2018, although it led to no result. *Id.* ¶ 53. This incident left plaintiff fearful of Purdy. *Id.* ¶ 56.

On June 22, 2018, Knight asked for an FMLA day because of the panic attack she suffered on June 21. *Id.* ¶ 45. On June 26, 2018, plaintiff received an email informing her that she must move her office near Ryan's that morning. Dkt. 1, ¶ 46. Plaintiff objected that this would aggravate her anxiety and post-traumatic stress disorder. *Id.* ¶ 47. The department's human resources division agreed to speak to the union, and until they did, plaintiff was allowed to remain in her original office. *Id.* ¶ 48. The department decided on giving plaintiff until July 13, 2018 to submit documents from her doctor supporting that she could not be required to move near Ryan. *Id.* ¶¶ 49-51.

On September 15, 2018, Knight took a week of vacation time, during which she had an elective surgery. Dkt. 1, ¶ 54. The department improperly counted this surgery against plaintiff's FMLA leave. *Id.*

On December 20, 2018, the department filed a Notice of Disciplinary Action against Knight. Dkt. 1, ¶ 58. The next day, plaintiff had been scheduled to testify regarding a notice of claim she had submitted against the department. *Id.* As a result of the disciplinary action, plaintiff was interrogated by the department on December 24, 2018. *Id.* ¶ 59. The

interrogation concerned a missing contract that plaintiff had submitted, but to which she had not yet received a response. *Id.* Plaintiff had emailed Cuddy concerning this missing contract and had asked for her help. *Id.* She received no response. *Id.* Plaintiff attributes this lack of response and the subsequent discipline both to retaliation for her filing the notice of claim, and to Cuddy's personal vendetta brought on by plaintiff's witnessing her extramarital affair on September 25, 2018. *Id.* ¶¶ 59, 60. As a result of the investigation and her continued struggles with her coworkers, plaintiff resigned from her position on January 28, 2019. *Id.* ¶ 14.

Knight brought the present complaint on June 15, 2019. Dkt. 1. On July 15, 2019, defendants moved to dismiss the complaint under Rule 12(b)(1), (2), (5), and (6), and to strike plaintiff's allegations of Cuddy's extramarital affair under Rule 12(f). Dkt. 5. Plaintiff cross-moved for leave to amend her complaint on August 30, 2019. Dkt. 13. The motions having been fully briefed, they will now be considered on the basis of the parties' submissions without oral argument.

## III.  LEGAL STANDARD

### A.  SUBJECT MATTER JURISDICTION.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings." *Saleh v. Holder*, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014) (citing *Makarova*, 201 F.3d at 113). "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss

under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." *Id.* at 138 (citations omitted).[2]

### B. <u>FAILURE TO STATE A CLAIM.</u>

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540. The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

## IV. <u>DISCUSSION</u>

Defendants have moved to dismiss Knight's complaint on fourteen grounds: (1) plaintiff's First Amendment claim is meritless because she only spoke of personal matters; (2) plaintiff's § 1983 claims against the county are not cognizable under *Monell*: (3) plaintiff does not allege a due process claim; (4) there is no private cause of action under HIPAA; (5) plaintiff has not sufficiently pled an FMLA claim; (6) plaintiff has not sufficiently pled an ADA claim; (7) plaintiff's negligence claims are barred by New York worker's compensation law; (8) plaintiff's state law claims accruing prior to July 28, 2018 are barred because she did not file a timely notice of claim; (9) plaintiff has not adequately pled that she merits protection as a

---

[2] Defendants' subject-matter jurisdiction arguments are limited only to plaintiff's state law claims. As such, this Court will nevertheless begin by addressing the sufficiency of plaintiff's federal law claims.

whistleblower; (10) plaintiff's claim for indifference to her mental health is not cognizable; (11) plaintiff has adequately pled neither intentional nor negligent infliction of emotional distress; (12) the department is not a separate entity from the county; (13) defendant Russell has not properly been served; and (14) plaintiff's miscellaneous passing references in the complaint do not form a viable cause of action.

Of those fourteen points, defendants' eighth argument, concerning Knight's failure to file a timely notice of claim is their only argument that this Court lacks subject-matter jurisdiction over the complaint. Additionally, defendants have since withdrawn their thirteenth argument, and have acknowledged that Russell was appropriately served.

Knight submitted a sprawling response that meaningfully addressed few of defendants' arguments. Instead, plaintiff seemed to construe defendants' legal arguments to be factual ones and argued that defendants in fact moved for summary judgment. In support of her opposition, plaintiff supplied several exhibits. Because defendants did not move for summary judgment either factually or functionally, plaintiff's exhibits will not be considered. Moreover, those exhibits improperly include photographs of children, which plaintiff should have censored before submitting, or else filed under seal. Dkt. 13-19; 13-20.

Knight otherwise argues against defendants' grounds for dismissal, and repeatedly requests that, should any of her claims fail, this Court grant her leave to amend them.

### A. **PLAINTIFF'S CLAIMS AGAINST THE COUNTY HEALTH DEPARTMENT.**

At the outset, defendants argue that Cayuga and the department are not separate entities. Knight agrees and explains that she merely put the department in the case caption to clarify which department of the county she had worked for. Accordingly, all claims against the department must be dismissed with prejudice. *See, e.g.*, *Gray-Davis v. N.Y.*, 2015 WL

2120518, at *6 (N.D.N.Y. May 5, 2015) (dismissing claims against municipal department and police department because proper defendants would be county and city, respectively).

**B. <u>PLAINTIFF'S FIRST AMENDMENT CLAIM.</u>**

Section 1983 vested in the people of the United States a cause of action to redress "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by any actor under the color of state authority. 42 U.S.C. § 1983. Among the rights that the people possess, "[t]he Supreme Court has long recognized that the First Amendment affords a degree of protection to public employees to exercise the right of free speech without risk of retaliation by the State employer . . . ." *Lynch v. Ackley*, 811 F.3d 569, 577 (2d Cir. 2016). A plaintiff's rights to petition the government are given the same protections and are analyzed identically. *Bates v. Bigger*, 56 F. App'x 527, 530 (2d Cir. 2002).

Of course, that protection must have certain limits. In particular, a court considering whether a plaintiff's First Amendment rights have been violated "must weigh the employee's speech interests against the government's interest in 'effective and efficient fulfillment of [its] responsibilities to the public, including promoting efficiency and integrity in the discharge of official duties, and maintain[ing] proper discipline in public service.'" *Lynch*, 811 F.3d at 577 (alterations in original) (citing *Lane v. Franks*, 573 U.S. 228, 242 (2014)). Given these considerations, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983).

"The Court determines as a matter of law whether the speech at issue touches a matter of public concern by examining its 'content, form, and context . . . as revealed by the whole record.'" *Harris v. Merwin*, 901 F. Supp. 509, 512 (N.D.N.Y. 1995) (alterations in original) (quoting *Connick*, 461 U.S. at 147-48 & n.7). In particular, the court looks to determine whether the speech touched on a "matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 573 U.S. at 241 (2014) (internal citations and quotation marks omitted).

Knight's speech that she alleges triggered retaliation from defendants consisted of her internal claims of workplace violence and defendants' FMLA and HIPAA violations. Dkt. 1, ¶ 77. Defendants argue that this speech touches only upon personal, rather than public, concern. Plaintiff argues that she has protected rights to free speech and to petition these alleged wrongs, and that they are issues of public concern because they were a means of "defending *herself* against retaliation towards *her* disability . . . ." Dkt. 13-22, p. 23[3] (emphasis added).

Knight's argument is simultaneously conclusory and self-contradictory. That she would be interested in protecting herself is obvious and understandable, but plaintiff in no way establishes that this interest extends beyond her to the public at large. On the contrary, the content of her protected statements involves only her personal frictions with the department; they do not elucidate some larger pattern of the department's assaulting its members or denying them leave. *See Harris*, 901 F. Supp. at 512. Similarly, she spoke in a forum and in a form designed only to reach her superiors in the department, rather than the

---

[3] Pagination corresponds with CM/ECF.

public, rendering her speech's context and form similarly private. *Id.* In no sense is plaintiff's speech a matter of public concern.

That Knight also relies on the petition clause, rather than only on the free speech clause, is irrelevant because the two clauses are protected under the same analysis. *Bates*, 56 F. App'x at 530 (ruling that plaintiff failed to state claim under petition clause of First Amendment because plaintiff did not demonstrate speech on a matter of public concern). Thus, plaintiff has not advanced a viable First Amendment claim, and her claim must be dismissed without prejudice.

### C. **PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM.**

Defendants next ask this Court to dismiss Knight's Fourteenth Amendment procedural due process claim under § 1983. In analyzing plaintiff's claim, there are two threshold questions that must be considered. *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). The first question is "whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes[.]" *Id.* Should plaintiff establish a liberty or property interest, the second question is "what process was due before plaintiff could be deprived of that interest." *Id.*

Construing the complaint liberally, Knight advances four potential property interests: (1) a property interest in her rank and position, *see Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 318 (2d Cir. 2002); (2) a property interest in her rights under the FMLA; (3) a property interest in her rights under the ADA; and (4) a property interest against disclosure of her private medical information under HIPAA.

Regarding her property interest in her rank and position, "where a New York state employee resigns and later contends that [her] resignation was not voluntary, the lack of a hearing prior to the resignation does not deprive the employee of procedural due process

because New York has provided an opportunity for a post-deprivation hearing in the form of an Article 78 proceeding." *Dodson v. Bd. of Educ. Of the Valley Stream Union Free Sch. Dist.*, 44 F. Supp. 3d 240, 248 (E.D.N.Y. 2014) (citing *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984)). Moreover, "[a]n Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that [s]he could in a § 1983 suit." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996). Accordingly, even assuming plaintiff did, in fact have a protected property interest in her rank and position, that interest was protected through plaintiff's rights to an Article 78 proceeding. As a result, plaintiff cannot claim a due process violation for her resignation.

Similarly, even assuming that Knight possessed a property interest in her rights under the FMLA, ADA, and HIPAA, she cannot claim that she was deprived of her rights to those interests in violation of due process when each statute that she relies on provides its own remedial scheme. The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered," but rather is a mechanism for ensuring the right to what process a plaintiff is due. *Cf. Daniels v. Williams*, 474 U.S. 327, 332 (1986) (denying substantive due process claim for negligent actions of state official).

It would be strange to hold that Knight has been denied due process of law for Cayuga's alleged deprivation of her rights under the ADA and FMLA in a lawsuit brought in part under the power of those statutes. Much as Article 78 forecloses plaintiff's recovery for her termination, she cannot claim that her property interest was deprived without due process while taking advantage of judicial protections and remedies that were created at the same time and by the same mechanism as the rights she claims. *See* 29 U.S.C. §§ 2615, 2617 (rendering it unlawful for any employer to interfere with employee's abilities to exercise their

rights under the FMLA and rendering employers liable to suit for violation of the FMLA); 42 U.S.C. §§ 12112, 12117 (declaring it unlawful to discriminate based on disability and establishing enforcement and remedies for discrimination).

HIPAA similarly affords Knight a remedial scheme to redress her purported violation. 42 U.S.C. § 1320d-6 (providing for a fine if a person knowingly discloses protected HIPAA information). Even assuming that these statutes each vest plaintiff with a property interest, she cannot claim that she was deprived of due process of law where processes exist specifically to vindicate those interests after the deprivation, and she is currently employing those same processes.

This Court is not inclined to carve out for Knight a cause of action sounding in due process which is duplicative of her existing causes of action under the FMLA and ADA. Nor is it inclined to divine such a cause of action for HIPAA violations, for which the existence of a private cause of action at all is "doubtful." *Bond v. Conn. Bd. of Nursing*, 622 F. App'x 43, 44 (2d Cir. 2015) (per curiam) (summary order) (collecting cases). Plaintiff has thus failed to adequately plead that she has suffered a due process violation given her post-deprivation remedies under the FMLA, the ADA, and HIPAA. Therefore, her due process claim must be dismissed without prejudice. *Cf. Gentleman v. State Univ. of N.Y.—Stony Brook*, 2016 WL 6892151, at *3 (E.D.N.Y. Nov. 21, 2016) (discussing ADA claim and due process claim without considering whether ADA violation implicated due process); *Dansby v. City of New York*, 2016 WL 9307473, at *4-5 (S.D.N.Y. Aug. 3, 2016) (discussing FMLA retaliation claim and due process claim without considering whether FMLA retaliation implicated due process).

### D. PLAINTIFF'S EIGHTH AMENDMENT CLAIM.

Knight next argues that defendants violated her rights by exhibiting deliberate indifference to her mental health. The Eighth Amendment protects against deliberate

indifference of prisoners' medical needs by prison officials.  *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  The Fourteenth Amendment's Due Process Clause also prohibits deliberate indifference to the needs of detainees awaiting criminal trial.  *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).  Plaintiff is neither a prisoner nor a detainee.  As such, her attempts to recover under constitutional prohibitions of deliberate indifference are troublingly frivolous.  This claim must thus be dismissed with prejudice.[4]

### E.  <u>PLAINTIFF'S HIPAA CLAIM.</u>

Knight's complaint next asserts a cause of action under HIPAA for Russell's disclosure of her information.  Although the Second Circuit has not ruled that there is no private cause of action under HIPAA, it has noted in dicta that it is "doubtful" that one exists, especially given the unanimity with which other circuits have rejected the notion.  *Bond*, 622 F. App'x at 44 (collecting cases).  Plaintiff, to her credit, acknowledges this fact, and asks this Court to contravene the Second Circuit—and every other circuit court to have addressed the issue— and instead rule that her private HIPAA information should be protected with a cause of action.

In determining whether to infer a cause of action from a statute,

Congressional intent is the keystone as to whether a federal private right of action exists for a federal statute.  Without a showing of congressional intent, a cause of action does not exist and courts may not create one[.] . . . [A c]ourt must begin its search for Congress's intent with the text and structure of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided.

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (internal citations and quotation marks omitted).

---

[4] Because plaintiff has failed to state any cognizable § 1983 claim, her derivative *Monell* claim must also be dismissed without prejudice as to her First and Fourteenth Amendment claims, but with prejudice with respect to her Eighth Amendment claim.  *Pinter v. City of New York*, 448 F. App'x 99, 106 (2d Cir. 2011) (dismissing derivative *Monell* claims where underlying § 1983 claims against individual were dismissed).

When confronted with the question of whether to infer a private right of action under HIPAA, the courts of this Circuit have consistently held that HIPAA "does not confer a private cause of action to any particular class of individuals . . . [or,] either explicitly or implicitly, confer to private individuals a right of enforcement." *Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 134 n.3 (N.D.N.Y. 2009) (citing *Barnes v. Glennon*, 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006)).  This Court agrees with the reasoning of the other courts to have considered the issue.  In particular, the existence of an enforcement mechanism within HIPAA itself to be applied by the Secretary of Health and Human Services suggests that there was no intention on Congress's part of supplying the public with a private cause of action.  *See Barnes*, 2006 WL 2811821, at *6.  Thus, this Court will not infer a private cause of action under HIPAA, and plaintiff's claims relying on that statute must be dismissed with prejudice.

**F.  PLAINTIFF'S FMLA CLAIM.**

Defendants raise two defenses against plaintiff's FMLA claims:  (1) that at least some of plaintiff's claims are time-barred; and (2) that plaintiff's FMLA claim is not legally cognizable.

**1.  WHETHER PLAINTIFF'S CLAIMS ARE TIME-BARRED.**

The statute of limitations for most FMLA claims is two years.  *See* 29 U.S.C. § 2617(c)(1) ("[A]n action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.").  However, a three-year statute of limitations exists for willful FMLA violations.  *See id.* § 2617(c)(2).

An alleged FMLA violation is willful if the employer knew or recklessly disregarded whether its conduct violated the FMLA.  *See Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530,

531-32 (2d Cir. 2004) (per curiam).  If, by contrast, the employer acted reasonably, or unreasonably without rising to the level of recklessness, in determining whether it was acting legally, the alleged violations are not willful.  *Id.*

Knight argues that defendants' violations of her rights under the FMLA constituted a continuing violation.  In calculating when the statute of limitations begins to run in the Title VII context, the "continuing violation" doctrine considers a claim timely so long as the claim is "timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination[.]"  *Patterson v. Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004).  The Second Circuit has not definitively ruled whether the continuing violation policy extends to FMLA claims.  *See Dansby*, 2016 WL 9307473, at *6.

However, this Court agrees that "if Congress had intended for a continuing violations exception to apply to the FMLA statute of limitations, 'it would likely have defined the operation of such an extended recovery period with greater detail . . . .'"  *Dansby*, 2016 WL 9307473, at *6.  The Southern District's logic that Congress could have "endorsed or ratified the preexisting judge-made 'continuing violations' doctrine in Title VII law" but declined to do so is also persuasive.  *Id.* (internal citations omitted).  Accordingly, this Court joins the Southern district in declining to extend the continuing violations doctrine to the FMLA.  *Id.* Any act contrary to the FMLA which was not willful, but that accrued before June 15, 2017, must be dismissed, as must any act constituting willful defiance of the FMLA accruing before June 15, 2016.

### 2.  <u>WHETHER PLAINTIFF ADEQUATELY PLEADED FMLA INTERFERENCE.</u>

Knight is unclear as to what precisely her claims under the FMLA are.  Instead, she broadly alleges that defendants violated her FMLA rights.  In attempting to construe her

claims, this Court notes that plaintiffs can sue under the FMLA at least for interference or retaliation.

To succeed on a claim for interference with FMLA rights, a plaintiff must establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer within the meaning of the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which the FMLA entitled her. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

Knight makes at least two allegations sounding in FMLA interference. She alleges that Cuddy placed her on time abuse and would not count time she was taking off as FMLA leave. Dkt. 1, ¶ 31. She also alleges that Purdy and Cuddy together conspired to deny her FMLA leave on May 17, 2018, when plaintiff suffered a panic attack at the prospect of needing to move back near Ryan. *Id.* ¶ 38. Defendants' arguments in favor of dismissal of plaintiff's FMLA claims rely puzzlingly on the assertion that plaintiff has not alleged that she was denied any FMLA leave. That assertion is simply false.

Moreover, these events occurred in October of 2017 and May of 2018, respectively, and are thus within the FMLA's statute of limitations, regardless of whether defendants acted willfully. *Id.* ¶¶ 31, 38. Because defendants have raised no other arguments in favor of dismissing plaintiff's FMLA claims that sound in interference, the claim survives defendants' Rule 12(b)(6) motion. However, plaintiff's allegations concerning Cuddy's withholding her re-certification materials from 2013-2017 and for the improper designation of her vacation time for cosmetic surgery as FMLA leave do not qualify as interference unless plaintiff can demonstrate that these actions in fact resulted in her being denied FMLA leave. Dkt. 1, ¶¶ 29, 54.

### 3. **WHETHER PLAINTIFF ADEQUATELY PLEADED FMLA RETALIATION.**

Additionally, Knight makes several claims that could sound in FMLA retaliation.  To establish an FMLA retaliation claim sufficient to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must show:  (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

Defendants do not dispute that Knight exercised her FMLA rights.  Nor do they argue that she was not qualified for her position.  Instead, their arguments against this Court's finding retaliation center on whether plaintiff suffered a cognizable adverse employment action.

An action is "adverse" for the purposes of FMLA retaliation if the action "is likely to dissuade a reasonable worker in the plaintiff's position from exercising [her] legal rights."  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011).  Adverse actions include constructive discharge.  *See Connolly v. Equity Servs., Inc.*, 756 F. App'x 83, 84 & n.1 (2d Cir. 2019).[5]  A constructive discharge occurs where the employer intends "to create an intolerable environment" and that in so doing they create "work conditions so intolerable that [a reasonable person] would have felt compelled to resign."  *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 308 (2d Cir. 2017).  As the "reasonable person" language suggests, the constructive discharge test is objective.  *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 241 (2d Cir. 2013) (finding no constructive discharge where plaintiff went on job-stress-related disability leave).  All told, constructive discharge presents a "high

---

[5] Courts apply the same standard for evaluating Title VII and FMLA constructive discharge claims.  *Connolly*, 756 F App'x at 84 n.1.

standard." *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 49 (2d Cir. 2014) (summary order).

For the purposes of a motion to dismiss, Knight has met the high standard of constructive discharge. *Adams*, 560 F. App'x at 49. Although plaintiff clearly had a severe reaction to being forced to move near Ryan, being forced to have an office located near a disliked or even hated coworker would not compel a reasonable person to resign. Dkt. 1, ¶¶ 43, 46. However, when combined with plaintiff's allegations of continued slights from her coworkers—and especially the December 20, 2018 Notice of Disciplinary Action— she could, potentially, marshal sufficient evidence to plausibly suggest constructive discharge. *Id.* ¶¶ 17-20, 58.

In fact, the investigation stemming from the Notice of Disciplinary Action alone can constitute an adverse employment action if Knight's employer intended it to constructively discharge plaintiff. *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 147 (2d Cir. 2014) ("[A]n employer's investigation may constitute a cognizable retaliatory action if carried out so as to result in a hostile work environment, constructive discharge, or other employment consequences of a negative nature[.]"). Assuming the facts of the complaint to be true, the Notice of Disciplinary Action concerned a non-issue that plaintiff had already attempted to resolve by notifying Cuddy, and Cuddy had simply ignored her. Dkt. 1, ¶ 59. Under those circumstances, it is plausible that Cuddy and the department intended to create an unbearable work environment for plaintiff by filing the notice. As such, plaintiff has successfully established adverse employment actions in the form of both her constructive discharge and her investigation stemming from the Notice of Disciplinary Action. However, these are the only two acts identified by plaintiff that are adverse.

Lastly, Knight has sufficiently—albeit barely—met her burden of establishing an inference of retaliatory intent. The Second Circuit has ruled that a mere temporal gap of "five months might be enough to establish a prima facie case" of retaliation, thus those five months might also be enough to survive defendants' motion to dismiss. *Cf. Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014) (noting in Title VII context that temporal proximity could support prima facie case for retaliation).

Knight's last use of FMLA time occurred in June of 2018, five months before the Notice of Disciplinary Action, which could plausibly constitute both an adverse employment action in itself and the signal of a sufficiently hostile work environment to constructively discharge her. Accordingly, in deference to plaintiff's lack of discovery and other means of obtaining evidence of a retaliatory motive on defendants' part at this juncture, plaintiff has established a sufficient inference of a retaliatory motive to survive defendants' motion to dismiss. Plaintiff's potential claims of FMLA retaliation thus must proceed. *See Abrams*, 764 F.3d at 254 (ruling that five-month gap between protected activity and adverse action "might" establish prima facie case of retaliation).

As relevant to both of Knight's potential FMLA claims, defendants also argue that the individual defendants do not qualify as employers and cannot be individually liable under the FMLA. "[I]ndividual public employees may be amenable to suit under the FMLA if they qualify as an employer under 29 U.S.C. § 2611(4)(A)(ii)(I) such that they had 'substantial control over the aspect of employment alleged to have been violated[.]" *Clark v. Dominique*, 798 F Supp. 2d 390, 406 (N.D.N.Y. 2011) (dismissing FMLA claims against individual defendants where plaintiff has failed to allege "any particularized or individualized" facts establishing that defendants had substantial control over FMLA claims). In other words, courts must ask "whether the alleged employer possessed the power to control the worker [] in question, with

an eye to the 'economic reality' presented by the facts of each case." *Graziadio*, 817 F.3d at 422 (internal citations and quotation marks omitted).

The factors relevant to determining whether an individual employee qualifies as an employer include whether the alleged employer: "(1) had the power to hire and fire the employees[;] (2) supervised and controlled employee work schedules or conditions of employment[;] (3) determined the rate and method of payment[;] and (4) maintained employment records." *Graziadio*, 817 F.3d at 422.

Although the complaint's allegations regarding Knight's relationship to each of the individual defendants are sparse to say the least, she has sufficiently pled that both Cuddy and Purdy qualify as employers. She has alleged that Cuddy is a director and her supervisor. Dkt. 1, ¶ 59. She has also alleged that Purdy had control over whether she received FMLA time and generally supervised her. *Id.* ¶¶ 31, 38.[6]

However, the only allegations in the complaint concerning Russell include that he is a human resources employee and that he disclosed Knight's HIPAA and leave information inappropriately. Dkt. 1, ¶¶ 33, 57. These allegations are insufficient to establish that he had control over plaintiff's FMLA leave such that he constituted an employer. As a result, plaintiff's FMLA claims against Russell in his individual capacity must be dismissed without prejudice, subject to plaintiff's bolstering her claims of his status as an employer.

## G. PLAINTIFF'S ADA CLAIM.

Much like her claims of FMLA retaliation, Knight has brought claims under the ADA in broad strokes, without specifically identifying the nature of the claims that she brings. There

---

[6] Plaintiff also alleges that Purdy occupied the role of Director of Community Health. Dkt. 1, ¶ 31. Whether this is contradictory or whether she and Cuddy occupied different roles involving the title of director is unclear from the complaint itself. This Court must construe the complaint in plaintiff's favor, however.

are, however, at least two types of claim rooted in the ADA:  (1) discrimination; and (2) retaliation.

### 1. THE INDIVIDUAL DEFENDANTS.

To the extent that defendants argue that Knight's ADA claims against the individual defendants in their personal capacities must be dismissed, they are correct.  Although the Second Circuit has not expressly ruled that there is no available remedy under the ADA against individual defendants, the district courts of this circuit—including this one—have overwhelmingly done so.  *See, e.g.*, *Frantti v. N.Y.*, 2017 WL 922062, at *5 (N.D.N.Y. Mar. 8, 2017); *Dominelli v. N. Country Acad.*, 2016 WL 616375, at *7 (N.D.N.Y. Feb. 16, 2016); *Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 343 (E.D.N.Y. 2014).

This Court maintains its agreement with the reasoning that supported those decisions, namely that "the ADA's statutory language is concerned with the alleged (mis)conduct of an entity—that is, an employer—covered by its various provisions."  *Frantti*, 2017 WL 922062, at *5.  Because the language of the statute focuses on the employer, rather than on individuals, this Court will not extend it to reach individual liability.  Thus, to the extent that plaintiff asserts claims under the ADA against defendants in their individual capacities, those claims must be dismissed with prejudice.

### 2. ADA DISCRIMINATION.

To state a plausible claim of discrimination under the ADA, a plaintiff must allege that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability."

*Caskey v. Cty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order) (alterations in original) (citing *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).

A plaintiff is disabled within the meaning of the ADA if she: (1) suffers from a physical or mental impairment; and (2) that impairment substantially limits a major life activity upon which the plaintiff relies. *See Potter v. Xerox Corp.*, 1 F. App'x 34, 37 (2d Cir. 2001).

Defendants first argue that Knight has failed to establish that she is a member of a protected class because she has only made vague references to a "mental health condition." Defendants are wrong; the complaint makes numerous references to plaintiff's condition of anxiety and post-traumatic stress disorder, which result in plaintiff's panic attacks. Dkt. 1, ¶¶ 23, 104, 113, 139, 143.

Nevertheless, Knight has not established that she is disabled within the meaning of the ADA. Many courts in the Second Circuit have confronted similar facts of plaintiffs suffering from anxiety and panic attacks related to their working conditions, and they have unanimously rejected the notion that these symptoms amount to disability that substantially limits plaintiffs' major life activities. *See, e.g.*, *Davitt v. Rockland Cty. Dep't of Mental Health*, 2013 WL 1091982, at *6-7 (S.D.N.Y. Mar. 15, 2013) (collecting cases and ruling that anxiety and depression did not constitute disability because it only interfered with ability to work in one role); *see also Price v. Mount Sinai Hosp.*, 458 F. App'x 49, 51-52 (2d Cir. 2012) (upholding dismissal because plaintiff had not established disability where workplace stress and depression did not disqualify her from a broad range of jobs).

Knight has not provided any allegations in the complaint that demonstrate that she is disabled within the meaning of the ADA. Her proposed disabilities of anxiety, post-traumatic stress disorder, and panic attacks are limited to her work environment. Every panic attack that she allegedly suffered was precipitated by friction caused by her relationships with her

fellow department employees.  Dkt. 1, ¶¶ 23, 35-36, 42.  She also specifically identifies her work environment and divorce as the causes of her alleged disability.  *Id.* ¶ 25.

Presumably, Knight could still work in an environment that did not provide these stressors, and she has not pled the existence of any other major life activity that her condition impedes.  Accordingly, to the extent she makes one, plaintiff's claim of ADA discrimination must be dismissed without prejudice.  *See Potter*, 1 F. App'x at 36-37 (upholding grant of summary judgment for defendant where plaintiff only demonstrated that working with single supervisor caused depression, anxiety, and panic attacks, and plaintiff failed to muster any further allegations of interference with major life activities).

### 3.  ADA RETALIATION.

To state a claim for ADA retaliation, a plaintiff must allege that: "(1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  Nowhere in the complaint does Knight allege that she engaged in any activity protected by the ADA.  As such, plaintiff has not sufficiently pled an ADA retaliation claim to survive defendants' motion to dismiss.  Thus, all of plaintiff's ADA claims against Cayuga must be dismissed without prejudice.

### H.  TIMELY NOTICE OF CLAIM AS TO PLAINTIFF'S STATE LAW CLAIMS.

A person pursuing a claim against a New York county or its employees in their official capacities must comply with the notice of claim requirements of N.Y. GEN. MUN. LAW § 50-e. N.Y. COUNTY LAW § 52.1.  Under § 50-e.1(a), the plaintiff must serve the municipal defendants with a valid notice of claim within ninety days after the claim arises.  N.Y. GEN. MUN. LAW § 50-e.  Without having served a timely notice of claim, no court has subject-matter

jurisdiction over that claim.  *See Dingle v. City of New York*, 728 F. Supp. 2d 332, 348-349 (S.D.N.Y. 2010) ("Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement[.]").

However, a plaintiff can apply to a court for permission to serve a late notice of claim. N.Y. GEN. MUN. LAW § 50-e.5.  Such applications must "be made to the supreme court or to the county court[.]"  N.Y. GEN. MUN. LAW § 50-e.7.  In construing this statute, the Second Circuit has not expressly ruled that district courts have jurisdiction over requests to provide late notice.  *See Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 540 (2d Cir. 1999).  That said, most district courts in the Second Circuit have determined that they do not have such jurisdiction.  *See, e.g.*, *Dodson*, 44 F Supp. 3d at 250.

In determining whether to grant an extension of the time to serve a notice of claim, courts should consider, among other things:  (1) whether the county acquired actual knowledge of the essential facts constituting the claim within the time specified; (2) whether the claimant was an infant, or mentally or physically incapacitated including by death; (3) whether the claimant justifiably relied on the county's settlement representations; (4) whether the claimant made an excusable error as to the identity of the county; (5) whether the delay was caused by technical failures; and (6) whether the delay substantially prejudiced the public corporation in maintaining its defense.  N.Y. GEN. MUN. LAW § 50-e.5.

However, where claims are filed against county employees in their individual capacities, "service of a notice of claim is not a condition precedent to the commencement of an action against a county's employees or agents unless the county is required to indemnify the individual defendants."  *Seale v. Madison Cty.*, 929 F Supp. 2d 51, 72 (N.D.N.Y. 2013). Whether the employees are entitled to indemnity turns on whether they were acting within the scope of their employment—in which case indemnification is necessary and plaintiffs must

comply with § 50-e—or whether they were acting outside the scope of their employment—such as through the commission of an intentional tort—in which case the plaintiff need not follow § 50-e's procedures. *Id.*

To the extent Knight asserts claims arising under state law against Cayuga prior to July 28, 2018, those claims must be dismissed for a lack of subject-matter jurisdiction. Dkt. 5-2, p. 11 (plaintiff's first notice of claim dated October 24, 2018). This Court agrees with the other courts of this Circuit that it does not have the jurisdiction to grant plaintiff leave to file a late notice of claim. Section 50-e explicitly states that "[a]ll applications" for a late notice of claim "*shall* be made to the supreme court or to the county court[.]" N.Y. GEN. MUN. LAW § 50-e.7 (emphasis added). In the face of a firm statutory mandate, this Court will not overrule the apparent intent of the State of New York. Thus, plaintiff's claims sounding in state law against the county occurring prior to July 28, 2018 must be dismissed without prejudice.

In any event, even if this Court did have jurisdiction to grant Knight leave to file a late notice of claim, it would not do so. Of the factors identified in § 50-e, plaintiff could not easily point to any that cut in her favor. It is possible that Cayuga had some notice of the essential facts that produced some of her claims through her internal complaints, but it could not possibly have received notice of each of the varied allegations that she asserts. *See* Dkt. 1, ¶¶ 20, 53 (plaintiff's allegations of filing complaints for a hostile work environment and Cuddy's assault and battery, respectively). Additionally, it is unlikely that the county can point to much in the way of prejudice resulting from the delay in notice. However, in no other way is plaintiff's lateness excused, and those two grounds, without more, are insufficient. Thus, even if this Court could grant plaintiff the right to file a late notice of claim, it would decline to do so.

Several of Knight's claims, however, are intentional tort claims against her coworkers in their official and personal capacities. Specifically, plaintiff alleges against Purdy false imprisonment, assault, and battery, and against all individual defendants intentional infliction of emotional distress. Defendants point to N.Y. PUB. OFF. LAW § 18.4 to establish that Cayuga would indemnify them, but that statute expressly notes that the county will not indemnify injuries resulting from "intentional wrongdoing." *Id.* § 18.4(b). The individual defendants thus are not entitled to indemnity by the county for their intentional torts. *See, e.g.*, *Lluberes v. City of Troy*, 2014 WL 1123413, at *21 (N.D.N.Y. Mar. 21, 2014) (ruling that notice of claim requirements do not apply to assault and battery claims against individual defendants); *Williams v. Cablevision Sys. Corp.*, 2000 WL 218403, at *4 (S.D.N.Y. Feb. 24, 2000) (ruling that notice of claim requirements do not apply to false arrest and false imprisonment claims against individuals); *cf. Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 559-60 (E.D.N.Y. 2011) (ruling that intentional infliction of emotional distress was violative of rules and regulations and thus city of New York special notice requirements do not apply).

## I. **PLAINTIFF'S FALSE IMPRISONMENT CLAIM.**

To prove false imprisonment under New York law, a plaintiff must prove: "(1) the defendant intended to confine [the plaintiff;] (2) the plaintiff was conscious of the confinement[;] (3) the plaintiff did not consent to the confinement[;] and (4) the confinement was not otherwise privileged." *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (alterations in original).

Knight alleges that Purdy falsely imprisoned her on June 21, 2018, by blocking her in her office despite her multiple requests to leave. Dkt. 1, ¶ 43. That plaintiff asked to leave but was denied satisfies each of the first three elements, because the request demonstrates that plaintiff did not consent to being confined, and the denial establishes both that Cuddy

intended to confine her and that plaintiff was aware of that intent. *McGowan*, 825 F.3d at 126. Defendants have not identified any privilege that would have allowed this defendant to confine her, and this Court is aware of none. Thus, plaintiff has plausibly alleged that this defendant falsely imprisoned her, and her false imprisonment claim must survive.

### J. <u>PLAINTIFF'S ASSAULT AND BATTERY CLAIM.</u>

Under New York law, "[a]n 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact. A 'battery' is an intentional wrongful physical contact with another person without consent." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001).

Knight alleges that Purdy twice grabbed her arms hard enough to cause bruising on June 21, 2018. Dkt. 1, ¶ 44. Plaintiff twice asked to be released, but this defendant refused. *Id.* Plaintiff has therefore successfully pleaded that this defendant battered her. Presumably, given the context of plaintiff's panic attacks and attempts to escape from this defendant's office, and the fact that this defendant grabbed her twice, she was also aware of—and in fear of—the imminent harmful contact. *Id.* Thus, although the complaint does not state with complete clarity that she feared that this defendant was trying to grab her with enough force to cause bruises, plaintiff's claim of assault and battery must survive.

### K. <u>PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.</u>

Proving a claim of intentional infliction of emotional distress requires: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). Regarding the first element, the conduct must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized society." *Tebbenhoff v. Elec. Data Sys. Corp.*, 244 F. App'x 382, 384 (2d Cir. 2007).

The standard for presenting a valid claim of intentional infliction of emotional distress is "rigorous, and difficult to satisfy." *Conboy*, 241 F.3d at 258 (citing *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993) (citation omitted)). So rigorous is this standard that "[i]n the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, [sexual] battery." *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 604 (E.D.N.Y. 1995) (collecting cases). As a result, "federal courts applying New York law regularly dismiss claims for intentional infliction of emotional distress." *Hendricks v. Cty. of Oneida*, 2013 WL 4106488, at *15 (N.D.N.Y. Aug. 13, 2013).

Regarding Cayuga, defendants also correctly assert that "public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity . . . ." *Crvelin v. Bd. of Educ. of City Sch. Dist.*, 43 N.Y.S.3d 614, 614 (App. Div. 4th Dep't 2016). Thus, to the extent that Knight asserts intentional infliction of emotional distress against Cayuga as a whole, that claim must be dismissed with prejudice.

As to the individual defendants, Knight has not made any allegations amounting to extreme or outrageous conduct. The closest she comes is Cuddy's alleged assault, battery, and false imprisonment, but even this event fails to carry plaintiff through defendants' Rule 12(b)(6) motion for two separate reasons. Dkt. 1, ¶ 44. First, plaintiff does not allege that there was any sexual dimension to any of the complained conduct. Therefore, her complaint falls far short of the standard imposed on extreme and outrageous conduct by New York courts. *See Gerzog*, 907 F. Supp. at 604.

Alternatively, as defendants correctly note, "the New York Court of Appeals has . . . cautioned that a claim for [intentional infliction of emotional distress] may not be sustainable 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014) (citing *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)). Because plaintiff's only allegations that even approach extreme and outrageous conduct are cognizable as assault and battery, these claims merit dismissal for this alternative reason as well. Therefore, her claims of intentional infliction of emotional distress against the individual defendants must also be dismissed without prejudice.

### L. PLAINTIFF'S WHISTLEBLOWER CLAIMS.

Knight's eighth claim alleges that she was harassed and retaliated against for being a "whistleblower." Dkt. 1, ¶ 134. But nowhere does plaintiff assert what whistleblower protections she relies on. Instead, she states in conclusory fashion that she is "suppose[d] to be protected by HIPAA, FMLA[,] and the ADA." *Id.* To the extent that plaintiff is claiming violations of these statutes, defendants correctly point out that those claims are duplicative of her other claims and must be dismissed.

Knight's response in her cross-motion only further confuses the issue by making passing references to state law, Title VII, 42 U.S.C. § 1981, and the First Amendment. She seems mostly to rely on the First Amendment as her source of protection, in which case that claim must again be dismissed as duplicative and meritless. Should she wish to maintain this claim, she must present a lucid legal theory of recovery. Until then, the complete lack of clarity as to this claim demands that it be dismissed without prejudice.

## M.  **PLAINTIFF'S NEGLIGENCE CLAIMS.**

Knight next asserts claims of general negligence against defendants, alleging that they exacerbated her anxiety and post-traumatic stress disorder through their negligent treatment of her.  She also alleges negligent infliction of emotional distress.  However, New York's Workers' Compensation Law provides that "[t]he right to compensation or benefits under this chapter, shall be the excusive remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ[.]"  N.Y. WORKERS' COMP. LAW § 29.6.  As such, New York's workers' compensation law "can and does bar state common law negligence claims."  *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997).

Knight's claims of common law negligence and negligent infliction of emotional distress for any act arising on or after July 28, 2018 must therefore be dismissed with prejudice.  *See, e.g.*, *Lowe v. Housing Works, Inc.*, 2013 WL 2248757, at *12 (S.D.N.Y. May 15, 2013) (ruling that exclusive remedy provision of workers' compensation precluded recovery for negligent infliction of emotional distress).

## N.  **PLAINTIFF'S MISCELLANEOUS POTENTIAL CLAIMS.**

Knight also makes passing references in her complaint to libel, slander, equal protection, and negligent hiring, training, and supervision.  This Court would be more sympathetic to her shotgun spread of potential claims were she proceeding *pro se*.  She is, however, counselled.  Her failure to present clean, clear claims—complete with citations to the proper foundational law and organized in such a way as to make her arguments cognizable—is as a result much harder to swallow.

That Knight did not actually defend these claims from defendants' arguments, and instead simply asked to be allowed to amend them, only makes matters worse.  Had plaintiff appropriately followed the local rules of this District and submitted a proposed amended

complaint, this Court would be able to address any proposed support for these claims and to determine whether amending these claims would be futile.  She failed to do so and should not be permitted to benefit from flaunting the rules.  To whatever extent plaintiff has asserted claims sounding in libel, slander, equal protection, and negligent hiring, retention, or training, those claims are dismissed without prejudice.

## O. **DEFENDANTS' MOTION TO STRIKE.**

Defendants have also moved under Rule 12(f) to strike certain paragraphs of Knight's complaint alleging that Cuddy engaged in an extramarital affair.  A court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f).  "A motion to strike is not favored and will not be granted unless it is clear that the allegation in question can have no possible bearing on the subject matter of the litigation." *Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 65 (N.D.N.Y. 2008) (internal citations and quotation marks omitted).

Indeed, "[i]t is settled in this Circuit that [such a] motion will be denied unless it can be shown that no evidence in support of the allegation would be admissible." *Kehr ex rel. Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 829 (S.D.N.Y. 2008) (internal quotation marks and citations omitted).  "Thus the courts should not tamper with the pleadings unless there is a strong reason for doing so." *McNeil v. Corr. Med. Care, Inc.*, 2019 WL 4415528, at *4 (N.D.N.Y. Sept. 16, 2019) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

This Court is not unsympathetic to defendants' arguments that these allegations of an alternative motive for Cuddy to target Knight may in fact weaken her retaliation claims by showing a cause for this defendant's adverse employment actions other than her application for FMLA leave.  Ultimately, however, the strong prohibitions against tampering with the

pleadings compel the denial of defendants' motion, especially considering that plaintiff's relationship with all her coworkers and the hostility of that relationship will be relevant to determining whether she was constructively discharged. *Cf. Crespo v. New York City Transit Auth.*, 2002 WL 398805, at *11-12 (E.D.N.Y. Jan. 7, 2002) (ruling against motion to strike where alleged sexual harassment contributed to determination of hostile work environment).

### P. **PLAINTIFF'S MOTION FOR LEAVE TO AMEND.**

Knight has also moved for leave to amend her complaint under Rule 15(a)(2). Under that Rule, a party cannot amend its complaint without the court's leave. Rule 15(a)(2). The court should, however, "freely give leave when justice so requires." *Id.* "Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal citation omitted).

Defendants correctly note that Knight's cross-motion fails to comply with Local Rules 7.1(a)(4)—for failing to provide a proposed amended complaint with a motion to amend—and 7.1(c)—because plaintiff did not properly label her motion as a cross-motion and exceeded the twenty-five-page maximum page limit for cross-motions.

Additionally, plaintiff used her lack of a proposed amended complaint as a shield against defendants' varied arguments in favor of dismissal. Instead of defending the viability of her claims, she repeatedly relied on her willingness to amend the complaint to carry her through defendants' motion to dismiss. But worst of all, plaintiff included with her submissions unredacted photographs of children. These failings together skirt dangerously close to bad faith and undue prejudice. *See Ruotolo*, 514 F.3d at 191.

Yet despite all these failings, Knight has nevertheless presented cognizable claims. Those claims, though unclear, are still viable. Additionally, some of plaintiff's claims could be

resuscitated should she amend her pleadings.  But if that is to happen, plaintiff must be permitted to prune, support, and clarify the complaint as it stands.  Additionally, the Second Circuit has been clear that it is error to grant a motion to dismiss while denying a plaintiff leave to amend, even where the plaintiff failed to submit a proposed amended complaint. *See Cresci v. Mohawk Valley Comm. College*, 693 F. App'x 21, 24-25 (2d Cir. 2017) (summary order) (ruling that district court's simultaneous grant of dismissal of complaint and denial of leave to amend because plaintiff failed to submit proposed amended complaint was error).

　　For these reasons, Knight must be granted leave to amend her complaint, despite the glaring insufficiencies of her cross-motion.  She may amend her complaint to:  (1) identify any expressions of protected public speech;  (2) identify any property interests to which defendants denied her procedural due process; (3) clarify whether she seeks relief for FMLA interference, retaliation, or both, and if she claims interference whether she was actually denied FMLA leave because of the improper designation of her time off for surgery as FMLA time or for Cuddy's withholding her re-certification papers; (4) establish a clearer causal connection between her FMLA leave and the retaliatory acts that she alleges; (5) clarify whether and to what extent defendants Purdy, Cuddy, and Russell controlled her employment and qualified as employers; (6) demonstrate disruption in any major life activity by her anxiety, post-traumatic stress disorder, and panic attacks; (7) identify any activities she conducted which were protected by the ADA; (8) clarify if and how Purdy subjected her to apprehension of an imminent assault during the alleged June 21 battery; (9) allege any facts that could constitute extreme and outrageous conduct for the purposes of intentional infliction of emotional distress; (10) clarify what law plaintiff relies on as a "whistleblower"; and (11)

provide concrete, discrete claims of libel, slander, violations of her right to equal protection, and negligent hiring, training, and supervision.

## V.    CONCLUSION

Defendants have successfully identified fatal flaws in several of Knight's claims, but not all.  Plaintiff's claims under the FMLA and her alleged intentional torts of false imprisonment and assault and battery under New York common law are cognizable and legally sufficient to survive defendants' motion under Rule 12(b)(6).  However, even these claims are nevertheless muddled and in desperate need of greater clarity for this complaint to move forward.  Plaintiff will be permitted to provide that clarity.  She is cautioned, however, not to take this Court's forbearance too far.  Plaintiff should pay close attention to the rules of this district and the orders of this Court.  She—and her counsel—will be expected to comply with both in the future.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2.  Plaintiff's cross-motion to amend is GRANTED in part and DENIED in part;

3.  Plaintiff's claims against the Cayuga County Health Department, her Eighth Amendment claims, her HIPAA claims, her ADA claims against the individual defendants, her claims of intentional infliction of emotional distress against the County of Cayuga occurring on or after July 28, 2018, and her claims of negligence and negligent infliction of emotional distress occurring on or after July 28, 2018 are DISMISSED WITH PREJUDICE;

4.  Plaintiff's claims of negligence and negligent infliction of emotional distress occurring before July 28, 2018 are DISMISSED WITHOUT PREJUDICE due to this Court's lack of subject matter jurisdiction;

5.   Plaintiff's claims of First Amendment retaliation, Fourteenth Amendment Due Process violations, her ADA claims against the County of Cayuga, her FMLA claim as to defendant Michael Russell, her intentional infliction of emotional distress claim against the individual defendants, her complaints of retaliation as a whistleblower, and her claims of libel, slander, equal protection, and negligent hiring, training, and supervision, are DISMISSED WITHOUT PREJUDICE for failure to state a claim;

6.   Plaintiff may amend her complaint to:  (1) clarify her remaining claims under the FMLA against the County of Cayuga, Nancy Purdy, and Kathleen Cuddy, as well as her false imprisonment and assault and battery claims against Purdy; and (2) to address the deficiencies identified by this Opinion in the claims dismissed without prejudice for failure to state a claim;

7.   Plaintiff may submit an amended complaint no later than 12:00 p.m. on November 8, 2019; and

8.   Defendants' motion to strike under Rule 12(f) is DENIED.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  October  9, 2019
        Utica, New York.