UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JULIE KNIGHT,

                              Plaintiff

              -v-                                    5:19-CV-712

COUNTY OF CAYUGA; NANCY PURDY,
Individually and in her capacity as an employee
of Cayuga County; KATHLEEN CUDDY,
Individually and in her capacity as an employee
of Cayuga County; and MICHAEL RUSSELL,
Individually and in his capacity as an employee
of Cayuga County,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


APPEARANCES:                                   OF COUNSEL:

OFFICE OF JARROD W. SMITH                       JARROD W. SMITH, ESQ.
Attorneys for Plaintiff
11 South Main Street
P.O. Box 173
Jordan, New York 13080

OFFICE OF JEFFREY R. PARRY                      JEFFREY R. PARRY, ESQ.
Attorneys for Plaintiff
7030 East Genesee Street
Fayyetteville, New York 13066

OFFICE OF FRANK W. MILLER                       CHARLES C. SPAGNOLI, ESQ.
Attorneys for Defendants                        FRANK W. MILLER, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057


DAVID N. HURD
United States District Judge

<h1 style="text-align: center;">MEMORANDUM–DECISION and ORDER</h1>

## I.  INTRODUCTION

Plaintiff Julie Knight ("Knight" or "plaintiff") was employed by defendant the County of Cayuga ("Cayuga" or "the county")'s health department for eighteen years.  During that time, defendants Nancy Purdy ("Purdy") and Kathleen Cuddy ("Cuddy") were counted among her supervisors.  Defendant Michael Russell ("Russell"), a human resources employee for the county, also crossed plaintiff's path over the course of her tenure.

Knight has brought a seven-count amended complaint against Cayuga and each of these individual defendants (together "defendants"):  (I) a claim under 42 U.S.C. § 1983 for a violation of plaintiff's Fourteenth Amendment due process rights; (II) a violation of plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-54 ("FMLA"); (III) a violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213; (IV) assault and battery against Purdy; (V) false imprisonment against Purdy; (VI) conspiracy "to harass and retaliate against . . . plaintiff so much that she had to resign and leave her employment" against both Purdy and Cuddy; and (VII) "aggravat[ing] plaintiff's pre-existing mental health conditions."  Defendants have moved to dismiss the amended complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6), and plaintiff has, for the second time, cross-moved to amend her complaint under Rule 15(a)(2).

## II.  BACKGROUND

The facts of this case were discussed at great length in this Court's October 9, 2019 Memorandum-Decision and Order.  *Knight v. Cty. of Cayuga*, 2019 WL 5067901 (N.D.N.Y. Oct. 9, 2019).  Thus, this Court will only pass briefly on the established facts, augmented by Knight's new allegations.

For eighteen years, Knight worked at Cayuga's Health Department's cancer services program. Dkt. 23 ("Comp."), ¶¶ 17, 62.[1] During her time working for the county, plaintiff alleges that her coworkers perpetrated against her an extensive list of slights and mistreatments beginning in March of 2009. *See, e.g.*, ¶¶ 18-22, 28-30.

Knight further alleges that she suffers from anxiety, post-traumatic stress disorder ("PTSD"), and panic attacks. Comp. ¶¶ 25, 47. Plaintiff attributes the state of her mental health to several antecedent causes, among them: (1) verbal and physical abuse by her stepfather; (2) being raped when she was eighteen; and (3) going through a divorce in 2012. *Id.* ¶¶ 23, 89, 91, 92. Plaintiff claims that the varied slights by her coworkers had a profoundly deleterious effect on her mental health. *Id.* ¶ 89.

Knight alleges that her panic attacks were so severe that they would cause her to: (1) sleep all day when not working; (2) avoid relationships and become mistrustful of people; (3) struggle with intimacy with her husband; and (4) be unable to fulfill her responsibilities as a wife and mother. Comp. ¶ 117. All told, plaintiff alleges that her mental health deteriorated to such an extent that by 2013 she needed to apply for the right to FMLA leave. *Id.* ¶ 27.

According to Knight, applying for FMLA leave only presented a new avenue for defendants to attack her. In July of 2017, Cuddy "violate[d] [p]laintiff's rights under [the] FMLA" by "illegally withholding . . . [p]laintiff's FMLA re-certification materials from 2013-2017. Comp. ¶¶ 30-31. In October of 2017, the same defendant placed plaintiff on time abuse and informed her that she did not count plaintiff's time off as FMLA leave. *Id.* ¶ 33.

On May 17, 2018, Knight needed to use FMLA time because she suffered a panic attack concerning her work conditions. Comp. ¶ 40. During the week of May 28, 2018,

---

[1] The facts are taken entirely from plaintiff's complaint, because for the purposes of a Rule 12(b)(6) motion, this Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff[.]" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

defendant Purdy, allegedly at Cuddy's advice, rejected plaintiff's leave application and claimed that she did not appear distressed when she left work the day before. *Id.*

On June 21, 2018, plaintiff was informed that she would be moved next to Deanna Ryan ("Ryan"), a coworker with whom she did not get along. Comp. ¶ 45. As a result, she suffered a severe panic attack in Purdy's office. *Id.* Plaintiff alleges that Purdy then blocked her in the office and twice grabbed her hard enough to cause bruising. *Id.* ¶ 46. Finally, Purdy allowed plaintiff to leave work once plaintiff's husband arrived to take her home. *Id.* Plaintiff took an FMLA day on June 22, 2018 because she was still so distraught from the prospect of moving near Ryan. *Id.* ¶ 47.

On June 26, 2018, Knight received an email informing her that she would move that morning. Comp. ¶ 48. Plaintiff immediately asked her management not to move her because it would exacerbate her disability. *Id.* ¶ 49. Cayuga's Human Resources asked to speak to plaintiff's union, and the move was put on hold. *Id.* ¶ 50. Nevertheless, on July 3, 2018, defendants provided plaintiff with questions to be answered by her doctor to substantiate her claims that the move would be detrimental to her health. *Id.* ¶ 53. Plaintiff was originally given until July 13, 2018, to provide defendants her doctor's answers. *Id.* However, upon request, plaintiff was given an extension until July 20, 2018. *Id.* ¶ 54.

During the week of September 15, 2018, plaintiff took a week off of work and had cosmetic surgery. Comp. ¶ 56. Defendants recategorized her time off as FMLA leave, despite that time not being cognizable as such. *Id.*

From April of 2017 to December of 2018, Knight used a folding office divider to separate herself from her coworkers and to prevent Purdy from staring at her while she worked. Comp. ¶ 107(f), (g). On September 24, 2018, Purdy grabbed the divider out of

plaintiff's hands and told her she could no longer use it. *Id.* ¶ 58. The same day, plaintiff asked defendant Russell why "no screens . . . can[] be used in [the] office space." *Id.* ¶ 59.

On December 20, 2018, defendants[2] filed a Notice of Potential Disciplinary Action under N.Y. Civ. Serv. Law § 75 ("§ 75") alleging that Knight had failed to submit a signed, outstanding contract. Comp. ¶¶ 60-61. Plaintiff alleges that she had asked Cuddy for assistance, but this defendant never responded. *Id.* ¶ 61. Finally, on January 28, 2019, plaintiff resigned from her position with the county. *Id.* ¶ 62.

Knight filed a complaint in this district on June 15, 2019. Dkt. 1. On July 15, 2019, defendants moved to dismiss the complaint under Rule 12(b)(1) and (6). Dkt. 5. On August 30, plaintiff responded, and cross-moved to amend her complaint. Dkt. 13. On October 9, this Court granted defendants' motion in part, denied it in part, and granted plaintiff's motion to amend. *See generally Knight*, 2019 WL 5067901.

On November 8, 2019, Knight filed an amended complaint. Dkt. 23. On November 21, defendants again moved to dismiss the newly amended complaint under Rule 12(b)(1) and (6). Dkt. 27. Plaintiff again responded to the motion with a cross-motion to amend. Dkt. 37. The motions having been fully briefed, this Court will now consider them on the parties' submissions without oral argument.

### III. <u>LEGAL STANDARD</u>

"To survive a Rule 12(b)(6) motion to dismiss,[3] the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839

---

[2] The complaint is unclear as to which defendants this allegation contemplates.

[3] For the second consecutive time, plaintiff has argued that defendants' motion under Rule 12(b)(6) was in actuality a motion for summary judgment under Rule 55. For the second consecutive time, plaintiff has failed to provide any basis to support that argument. Thus, defendants' motion will be construed as one to dismiss under Rule 12(b)(6) and plaintiff's submitted evidence will in no way factor into this Court's analysis. That said, to the extent that defendants rely on three extrinsic documents, those documents will not be considered. This Court finds them not to be incorporated by reference in the complaint, nor does the complaint rely "heavily upon" any of their terms or effects. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540.  The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

## IV.  **DISCUSSION**

Defendants have moved to dismiss Knight's complaint on eight grounds:  (1) plaintiff has failed to establish *Monell* liability to render the County of Cayuga liable for her § 1983 claims; (2) plaintiff has failed to adequately allege a due process claim; (3) plaintiff's FMLA claim fails as a matter of law; (4) plaintiff's ADA claim is unsupported by factual allegations; (5) plaintiff's claims of conspiracy to harass and aggravation of pre-existing mental health conditions are not cognizable; (6) plaintiff's miscellaneous references to slander and equal protection violations do not supply a viable cause of action; (7) plaintiff's official capacity claims are redundant and should be dismissed; and (8) this Court should decline to exercise supplemental jurisdiction over any remaining state law claims if plaintiff's federal claims are dismissed.

Knight's response only sincerely addresses the first four of these points.  It also raises objections based on *Dunton v. Cty. of Suffolk*, 729 F.2d 903, 908-09 (2d Cir. 1984), which

United States Magistrate Judge Thérèse Wiley Dancks has already addressed and which need not be examined here.  Dkt. 43.

**A.  <u>PLAINTIFF'S OFFICIAL CAPACITY CLAIMS.</u>**

Defendants first argue that Knight's claims against the individual defendants in their official capacities are redundant to her claims against Cayuga.  They are correct.  *Rubeor v. Town of Wright*, 191 F. Supp. 3d 198, 208 (N.D.N.Y. 2016) ("Claims against individual defendants in their official capacities are really just claims against the municipality and, thus, are redundant when the municipality is also named as a defendant." (internal citations and quotation marks omitted)).  Therefore, all claims against defendants in their official capacities must be dismissed with prejudice.

**B.  <u>PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM.</u>**

Defendants next argue that Knight's Fourteenth Amendment procedural due process claim under § 1983 must be dismissed.  In analyzing a due process claim, there are two questions that must be considered.  *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).  The first question is "whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes . . . ."  *Id.*  Should plaintiff establish a liberty or property interest, the second question is "what process was due before plaintiff could be deprived of that interest."  *Id.*

Knight's original complaint's due process claims rested on four potential property interests:  (1) a property interest in her rank and position, *see Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 318 (2d Cir. 2002); (2) a property interest in her rights under the FMLA; (3) a property interest in her rights under the ADA; and (4) a property interest against disclosure of her private medical information under HIPAA.  None of those bases were adequate, and plaintiff's due process claim was thus dismissed without prejudice.  *Knight*, 2019 WL

5067901, at *5-6. Plaintiff's amended complaint does nothing to resuscitate those arguments, and her response imports word-for-word the same bases that failed to protect her claims last time. Accordingly, she cannot rely on them to sustain her § 1983 claim.

Knight's only novel allegations sounding in due process are that she was not given sufficient notice of the topic of her § 75 hearing and that she was denied representation by her attorney or by a union representative at the same. Comp. ¶¶ 79-81. However, even this generous reading of the complaint puts the cart in front of the horse. Assuming that any of the defects that plaintiff has alleged in her § 75 proceeding amounted to a violation of due process, she has still failed to state that it led to a deprivation of any property or liberty interest. Plaintiff has thus still not demonstrated any liberty or property interest that she lost without due process, and therefore her Count I due process claim must be dismissed with prejudice.[4]

## C. **PLAINTIFF'S FMLA CLAIM.**

Defendants raise several arguments in favor of dismissing Knight's claims under the FMLA. Among them, many rely on this Court's prior Memorandum-Decision and Order to reiterate that plaintiff cannot assert FMLA claims based on non-willful acts prior to June 15, 2017, willful acts prior to June 15, 2016, and that most of plaintiff's allegations are not cognizable as FMLA violations. Defendant is correct on each point. Defendant also argues that: (1) plaintiff's allegations render a claim of a retaliatory motive implausible; (2) the individual acts that plaintiff cites are inadequate to support her FMLA claim; and (3) plaintiff has no remaining claims against defendant Russell. Those three points require closer scrutiny.

---

[4] Because plaintiff has failed to state a cognizable § 1983 claim, her derivative *Monell* claim must also be dismissed with prejudice. *Pinter v. City of New York*, 448 F. App'x 99, 106 (2d Cir. 2011) (dismissing derivative *Monell* claims where underlying § 1983 claims against individual were dismissed).

## 1. **FMLA INTERFERENCE.**

To succeed on a claim for interference with FMLA rights, a plaintiff must establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer within the meaning of the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which the FMLA entitled her. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

In its prior Memorandum-Decision and Order, this Court upheld Knight's FMLA interference claim because she plausibly alleged that defendants interfered with her right to FMLA leave on at least two occasions. *Knight*, 2019 WL 5067901, at *8. First, plaintiff plausibly alleged that Cuddy interfered with her FMLA rights in October of 2017 by placing plaintiff on time abuse and refusing to count her time off as FMLA leave. Comp. ¶ 33. Second, plaintiff plausibly alleged that the week of May 28, 2018, Purdy, through Cuddy's advice, rejected plaintiff's FMLA leave application for a day that plaintiff claimed to have suffered a panic attack. *Id.* ¶ 40. Those bases of interference remain valid, and defendants do not dispute them. Thus, plaintiff's FMLA interference claim remains.

However, Knight also added an extensive list of additional adverse actions in her amended complaint. The only allegations that mention the FMLA are that: (1) defendants harassed plaintiff's doctors while not sending her to a county doctor in the process of approving her FMLA request; and (2) defendants Cuddy and Russell withheld plaintiff's "re-certification paperwork" from 2013 to 2017 and from November 2018 until January 2019, respectively.[5] Comp. ¶ 107(c), (h).

---

[5] Plaintiff's allegation that Cuddy withheld her re-certification materials appeared in plaintiff's initial complaint as well, although her allegation against Russell is novel. Dkt. 1, ¶ 29. Anticipating plaintiff's amended complaint, and because plaintiff's FMLA interference claim survived on other grounds, this Court did not pass on this claim in its earlier order.

Assuming that defendants did, in fact, harass Knight's doctor, that would impose an impediment to her receiving the benefits intended by the FMLA, and thus this allegation sufficiently amounts to interference.  Comp. ¶ 107(c).  Similarly, preventing plaintiff's re-certification materials from reaching their destination would constitute interference with her right to FMLA leave, and thus plaintiff's allegations of withholding re-certification materials also survive.  *Id.* ¶ 107(h).  However, to the extent that Knight's allegations of withholding re-certification information includes Cuddy's willful actions before June 15, 2016, plaintiff's allegations cannot proceed because they are time-barred, as explained in the earlier Memorandum-Decision and Order.  *Knight*, 2019 WL 5067901, at *8.  However, the remainder of plaintiff's newly alleged adverse actions do not involve plaintiff's FMLA rights and cannot support this claim.

## 2.  <u>FMLA RETALIATION.</u>

Additionally, Knight makes several claims that could sound in FMLA retaliation.  To establish an FMLA retaliation claim sufficient to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must show:  (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).  However, in deference to the reduced requirements of the *McDonnell Douglas* framework in the initial phase of litigation, a plaintiff need plead only "minimal support for the proposition that the employer was motivated by discriminatory intent."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).[6]

---

[6] Although *Littlejohn* dealt with Title VII claims, FMLA retaliation claims—as well as ADA discrimination and retaliation claims—are subject to the same relaxed standards of pleading intent.  *See, e.g.*, *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 615-16 (E.D.N.Y. 2017) (treating FMLA retaliation and ADA retaliation claims identically (citing *Littlejohn*, 795 F.3d at 316)).

Defendants do not dispute that Knight exercised her FMLA rights. Nor do they argue that she was not qualified for her position. Instead, their arguments against retaliation center on whether plaintiff suffered a cognizable adverse employment action.

An action is "adverse" for the purposes of FMLA retaliation if the action "is likely to dissuade a reasonable worker in the plaintiff's position from exercising [her] legal rights." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011). "[A]ctions that are 'trivial harms'—*i.e.*, 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse." *Rivera v. Rochester Genesee Reg'l Trans. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014) (citing *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011)).

Adverse actions do, however, include constructive discharge. *See Connolly v. Equity Servs., Inc.*, 756 F. App'x 83, 84 & n.1 (2d Cir. 2019) (summary order).[7] A constructive discharge occurs where the employer intends "to create an intolerable environment" and in so doing they create "work conditions so intolerable that [a reasonable person] would have felt compelled to resign." *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 308 (2d Cir. 2017). As the "reasonable person" language suggests, the constructive discharge test is objective. *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004); *see Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 241 (4th Cir. 1997) (finding no constructive discharge where plaintiff went on job-stress-related disability leave). All told, constructive discharge presents a "high standard." *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 49 (2d Cir. 2014) (summary order).

Defendants' first salvo against Knight's FMLA retaliation claim failed because under the minimal requirement for plaintiff to plead in support of discriminatory intent, the five-month

---

[7] Courts apply the same standard for evaluating Title VII and FMLA constructive discharge claims. *Connolly*, 756 F App'x at 84 n.1.

time-gap between plaintiff's last FMLA use in June of 2018 and the § 75 hearing that tipped her conditions into a constructive discharge was narrowly sufficient to provide an inference of discriminatory intent. *Knight*, 2019 WL 5067901, at *10. Defendants' second motion points out that this basis for holding discriminatory intent is weak, and that her complaint asserts a bevy of other motives for hostile treatment, beginning in 2009, well before plaintiff's panic attacks reached the point that she needed FMLA leave. *See, e.g.*, Comp. ¶¶ 18, 62.

Defendants' arguments are not without merit, but the strong language requiring only minimal pleadings of retaliatory intent, and the difficulty of attaining evidence of discriminatory intent absent discovery, still counsel permitting Knight's claims to remain. *Littlejohn*, 795 F.3d at 311. This claim is certainly weak, and plaintiff faces a tall order in trying to maintain it once discovery comes to light. Nevertheless, it would be inappropriate to resolve plaintiff's FMLA retaliation claim at this time and under the Rule 12(b)(6) standard.

It is worth noting, however, that defendants correctly point out that none of plaintiff's new allegations of adverse actions qualify for retaliation. *See* Comp. ¶ 107(a)-(*l*). Most of the claims, including removing plaintiff's divider and failing to swiftly remove a lightbulb that aggravated plaintiff, essentially define the minor annoyances that retaliation claims are not meant to contemplate. *Rivera*, 743 F.3d at 25. Although more substantial, denying plaintiff the use of a county vehicle and temporarily denying her CPR certification also both fall far below the requisite standard of an adverse employment action.

### 3. **DEFENDANT RUSSELL.**

Defendants argue that defendant Russell was not involved in any of Knight's FMLA allegations.[8] Defendants are incorrect for both FMLA interference and retaliation. As discussed above, plaintiff's allegation that Russell withheld her re-certification materials for

---

[8] Defendants appear to have abandoned the argument that Russell was not an employer in light of plaintiff's supplementing her allegations about his role. Comp. ¶ 16.

two months without approving them interfered with her ability to partake of FMLA leave. Comp. ¶ 107(h). Thus, plaintiff has a surviving FMLA interference claim against Russell personally. As for plaintiff's retaliation claim, she spreads her claims of responsibility for the § 75 hearing—and its resulting constructive discharge—across all defendants. *Id.* ¶¶ 60-61. Thus, plaintiff's FMLA retaliation claim against Russell must also survive plaintiff's Rule 12(b)(6) motion.

### D. **PLAINTIFF'S ADA CLAIM.**

Once again, Knight was specifically ordered to clarify whether she intended to assert ADA discrimination, retaliation, or a failure to accommodate. She failed to do so, and instead has brought only a single claim for an ADA "violation." Nevertheless, defendants have argued that she has failed to state a claim under the ADA for discrimination, retaliation, or a failure to accommodate.

### 1. **ADA DISCRIMINATION.**

To state a plausible claim of discrimination under the ADA, a plaintiff must allege that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Caskey v. Cty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order) (alterations in original) (citing *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)). An adverse employment action under the ADA is an action that is "materially adverse" to the employee's "terms and conditions of employment." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.*

One species of ADA discrimination is a failure to accommodate claim.  A plaintiff can prove a failure to accommodate by establishing that:  (1) she is a person with a disability within the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017).

A plaintiff is disabled within the meaning of the ADA if she:  (1) suffers from a physical or mental impairment; and (2) that impairment substantially limits a major life activity upon which the plaintiff relies.  *See Potter v. Xerox Corp.*, 1 F. App'x 34, 36-37 (2d Cir. 2001).

Knight's ADA claim in her initial complaint did not survive defendants' motion to dismiss because plaintiff failed to establish through her pleadings that she was disabled within the meaning of the ADA.  *Knight*, 2019 WL 5067901, at *11 (citing *Price v. Mount Sinai Hosp.*, 458 F. App'x 49, 51-52 (2d Cir. 2012) (upholding dismissal because plaintiff had not established disability where workplace stress and depression did not disqualify her from a broad range of jobs); *Davitt v. Rockland Cty. Dep't of Mental Health*, 2013 WL 1091982, at *6-7 (S.D.N.Y. Mar. 15, 2013) (collecting cases and ruling that anxiety and depression did not constitute disability because it only interfered with ability to work in one role)).

Knight's amended complaint seeks to remedy that failing with four allegations of major life activities she claims her PTSD has interfered with:  (1) sleeping all day when not at work[9]; (2) socializing with friends and family; (3) intimacy with her husband; and (4) "the duties and obligations of a wife and mother."  Comp. ¶ 93.  There are reasons to doubt whether any of these life activities are "major."  *See, e.g.*, *Scheerer v. Potter*, 443 F.3d 916, 921 (7th Cir.

---

[9] This is, of course, not a major life activity, but rather an insinuation that other major life activities would be limited by plaintiff's sleeping.  Given this allegation's failure to meaningfully address the fundamental defect in plaintiff's ADA claim, it is insufficient to save plaintiff's claim.

2006) (noting that sexual intercourse is only a major life activity to the extent that it is necessary to reproduction, and mere decline in sexual frequency or appetite does not amount to substantial interference); *Contreras v. Suncast Corp.*, 237 F.3d 756, 764 (7th Cir. 2001) (same); *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 306-07 (S.D.N.Y. 2003) (same); *Herschaft v. N.Y. Bd. of Elections*, 2001 WL 940923, at *4 (E.D.N.Y. Aug. 13, 2001) (noting that it is "by no means clear" that socialization is a major life activity and noting that even if it were the standard to prove substantial limitation would be high), *aff'd by* 37 F. App'x 17, 18 (2d Cir. 2002) (summary order).

That said, holding outright that none of Knight's asserted bases plausibly alleges a substantial limitation with a major life activity would require a great deal of factual analysis that skirts dangerously close to impropriety in the Rule 12(b)(6) context and would be better addressed on summary judgment.  Nevertheless, even assuming that plaintiff has successfully pled an interference with a major life activity, she has failed to plead any incident of discrimination under either the adverse employment action or the failure to accommodate theories of recovery that elevates her claim to the level of plausibility.

Knight's complaint alleges a sprawling yarn of slights and abuses, this is true, but she provides precious few connections between them and her alleged disability.  Moreover, very few could plausibly amount to an adverse employment action within the meaning of the ADA. *Davis*, 804 F.3d at 235.  Among them are only:  (1) a failure to accommodate plaintiff's request not to be moved near Ryan; (2) taking down plaintiff's office divider; (3) the § 75 proceeding; and (4) the alleged constructive discharge.

Knight's allegation that defendants failed to accommodate her disability by moving her near Ryan despite her protests that such a move would exacerbate her mental health issues fails for the simple reason that the complaint never actually alleges that plaintiff was ever

moved.  Indeed, if anything, the complaint demonstrates that plaintiff alerted human resources that the move would have a deleterious effect on her, and that human resources postponed the move and asked for verification from plaintiff's doctor whether moving would truly interfere with her ability to work.  Comp. ¶¶ 50-54.  Given that defendants appeared to make an effort to accommodate—and that no allegation in the amended complaint actually states that she was ever made to move—this claim cannot survive on this basis.

Knight's second potential basis for a failure to accommodate, namely defendant Purdy's removal of a screen that plaintiff put up in her office, fails for similar insufficiencies. Comp. ¶ 58.  In theory, given the absence of supporting factual allegations housed within the complaint, there exists a series of assumptions that can be made to bring the meager, two-paragraph allegation concerning plaintiff's office screen within the purview of a failure to accommodate claim.

First, it would have to be assumed that plaintiff used the screen to shield herself from stimuli that trigger her panic attacks.  If this was, in fact, the screen's purpose, the amended complaint does not betray the secret.  *See* Comp. ¶¶ 58-59.  Indeed, the only use plaintiff alleges for the screen anywhere is that she used it to prevent Purdy from staring at her while she worked.  *Id.* ¶ 107(g).  Second, it would have to be assumed that Purdy knew when she physically removed it from plaintiff's office that the screen was intended to help limit plaintiff's panic attacks.  Again, the amended complaint plays coy.  *Id.* ¶¶ 58-59.

The third assumption required to carry the amended complaint to sufficiency is that when plaintiff asked defendant Russell "why . . . screens cannot be used in [the] office space," that plaintiff was not asking the question generally, but instead why her personal screen, to compensate for her personal disability, could not remain.  *Id.* ¶ 59.  At last the amended complaint speaks, but not to confirm the point.  Instead, the amended complaint

phrases plaintiff's question as a general inquiry about screens in the office, entirely unrelated to her disability.

Fourth and finally, a finding that the complaint has plausibly pled a claim of failure to accommodate would require an assumption that plaintiff received no response from Russell, or a non-answer, or anything but a reasonable explanation why her screen could not remain or permission to reinstall it. Even on this point the complaint gives no guidance except that plaintiff's claim is baseless, because she alleges that she used the divider until December of 2018, three months after she asked Russell why dividers could not be used. Comp. ¶¶ 59, 107(f).

It is doubtless true that all reasonable inferences must be drawn in Knight's favor in deciding defendants' Rule 12(b)(6) motion. *Ginsburg*, 839 F. Supp. 2d at 540. However, this Court is not required to engage in a multi-level series of speculations as to facts outside the complaint all contemplating the most favorable possible universe to plaintiff. *See id.* (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level").

It would be a murky question if Knight's claim could survive if plaintiff were *pro se*, and if this were her first complaint. Neither is the case. Plaintiff is represented by experienced counsel and has already had her claim dismissed once for its inadequacy. On her second attempt to provide a workable complaint, given the ease with which she could have clarified any of these opacities through pleading information that she herself possesses, plaintiff's complaint cannot be considered plausibly alleged even under the lax standard of plausibility. *See Littlejohn*, 795 F.3d at 310-11.

Finally, Knight has not anywhere attributed her § 75 hearing or the resulting constructive discharge to her disability. Instead, she attributes the hearing to "retaliat[ion] for

[p]laintiff exercising her rights" under her Collective Bargaining Agreement and the NYSHRL. Comp. ¶ 61.  She lists her "right to free speech," her "right to be safe at her employment," her "rights to grieve without retaliation," and her right to "equal protection of the law" as her protected interests that she alleges defendants violated.  Comp. ¶¶ 63-64.  Not once does she allege that defendants acted on this basis, or in general, to discriminate based on her disability.  Such sparse and ill-supported pleadings cannot carry a counselled plaintiff's pleadings through a motion to dismiss.  Thus, plaintiff has asserted no viable ADA discrimination claim, and her claim must be dismissed with prejudice.

## 2.  **ADA RETALIATION.**

To state a claim for ADA retaliation, a plaintiff must allege that: "(1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took [an] adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  An activity protected by the ADA includes a complaint of ADA discrimination or a request for accommodation.  *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017) (summary order).

To whatever extent Knight's initial complaint alleged a claim of retaliation under the ADA, it was dismissed for a failure on her part to allege any protected activity under the ADA. *Knight*, 2019 WL 5067901, at *11.  Even reading the amended complaint as favorably to plaintiff as possible, the only acts that even approach a request for an accommodation, and thus a protected activity, are plaintiff's request not to be moved near Ryan on June 26, 2018, and her protesting the removal of her office screen on September 24 of the same year. Comp. ¶¶ 48-50, 58-59.

For the reasons discussed above in dealing with Knight's FMLA retaliation claim,[10] the only possible adverse actions in this case are constructive discharge and the § 75 investigation. The § 75 hearing took place in December of 2018, six months after plaintiff formally requested accommodations in the form of not being relocated near Ryan.[11] Comp. ¶¶ 48-50, 60. This gap of time, unsupported by any other allegations to evince a causal connection between plaintiff's alleged adverse actions and her request not to be moved near Ryan, cannot sustain an allegation of ADA retaliation. Therefore, to whatever extent plaintiff's complaint states a claim for ADA retaliation, that claim must be dismissed with prejudice.

### E. PLAINTIFF'S HARASSMENT, RETALIATION, AND AGGRAVATION CLAIMS.

For Counts VI and VII of her amended complaint, Knight claims that: (VI) Purdy and Cuddy "conspired to harass and retaliate against the plaintiff so much that she had to resign"; and (VII) defendants "aggravated plaintiff's pre-existing mental health conditions."

Defendants argue that these claims do not supply viable causes of action. In particular, defendants argue that these claims are either redundant of Knight's other causes of action for ADA or FMLA retaliation or are inadequately pled intentional infliction of emotional distress claims. Plaintiff does not make any arguments as to the validity of these claims.

Count VI of the amended complaint is almost identical to Count VIII of Knight's original complaint. *Compare* Comp. ¶¶ 134-44, *with* Dkt. 1, ¶¶ 133-137.[12] The only meaningful differences between the two are the absence in the amended complaint of any reference to

---

[10] The standard for an adverse employment action under the ADA and FMLA are the same. *See Spaulding v. New York City Dep't of Educ.*, 2015 WL 12645530, at *41 (E.D.N.Y. Feb. 19, 2015) (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 177 (2d Cir. 2006)).

[11] For the same reasons discussed above regarding plaintiff's ADA discrimination claims, this Court will not consider the events concerning her office screen to be a request for accommodation sufficient to trigger ADA protections.

[12] Although it would appear that there are several more paragraphs in the amended complaint, the original complaint for this claim contains paragraphs 133-41, and then contains a second paragraph 137 after paragraph 141. Dkt. 1 ¶¶ 134-37.

plaintiff's status as a whistleblower and an extended explanation of the various factual predicates to the claim.  *Compare* Comp. ¶¶ 134-44, *with* Dkt. 1, ¶¶ 133-137.  However, neither of those changes corrects the fundamental defect that merited the dismissal of that claim.  Namely, that plaintiff has failed to identify any basis of law for her vague retaliation claim.  Because plaintiff has entirely ignored defendant's arguments favoring dismissal of that claim, and this is plaintiff's second shot at supplying a basis of law, this Court is satisfied that no such basis exists.  Count VI of the amended complaint must thus be dismissed with prejudice.

Count VII of Knight's amended complaint, alleging indifference to mental conditions that caused the aggravation of pre-existing mental health conditions is similarly identical to Count IX of her original complaint.  *Compare* Comp. ¶¶ 145-49, *with* Dkt. 1, ¶¶ 138-41.[13] This Court is aware of no cause of action for "indifference to mental conditions" nor "aggravation to pre-existing mental health conditions."  Indeed, this count seems more in line with allegations of damages than any kind of actionable tort.  To whatever extent this claim could be cognizable as infliction of emotional distress, the prior decision disposed of those claims, and plaintiff has advanced no basis to allow them to be revived.  *Knight*, 2019 WL 5067901, at *14.  Thus, this claim is similarly untenable and plaintiff has not defended it.  It too must be dismissed with prejudice.

### F.  PLAINTIFF'S MISCELLANEOUS POTENTIAL CLAIMS.

The first complaint made passing, unsupported references to slander and a denial of her right to equal protection under the law.  *See, e.g.*, Dkt. 1, ¶¶ 31, 61.  Out of due diligence, defendants moved to dismiss any claim that Knight's attorney may have intended to state

---

[13] Although there is of course one more paragraph in the range of 145-49 than there is in 138-41, that difference is not owed to any substantive change.  Rather, there is one additional numbered paragraph in the amended complaint because there are two paragraphs numbered 140 in the original complaint.  *Compare* Comp. ¶¶ 145-49, *with* Dkt. 1, ¶¶ 138-41.

through such loaded litigative language.  In response, plaintiff's attorney neither defended these claims nor acknowledged that she did not intend to make them in the first place.

Rather, he took a third tack.  Kngiht's attorney's argument on that score amounted to: "If after reviewing the entirety of [p]laintiff's submission in response, the Court believes the complaint is insufficient, [p]laintiff requests leave to amend her complaint.  However, [p]laintiff's position is that the complaint is complete in all respects when reviewing within the confines of the standard of review" of a Rule 12(b)(6) motion.  Dkt. 13-22, p. 34.

This Court granted defendants' motion and dismissed any potential slander or equal protection claims without prejudice.  *Knight*, 2019 WL 5067901, at *15.  In so doing, it admonished Knight's attorney for failing to either properly defend these potential claims or acknowledge that he did not intend to state a claim in the first place.  *Id.*

The amended complaint retains those same references to slander and equal protection.  Comp. ¶¶ 33, 64.  Defendants have again moved to dismiss any potential claim that those references may suggest.  Not to be outdone, Kngiht's attorney's response contained a familiar refrain:  "If after reviewing the entirety of [p]laintiff's submission in response, the Court believes the complaint is insufficient, [p]laintiff requests leave to amend her complaint.  However, [p]laintiff's position is that the complaint is complete in all respects when reviewing within the confines of the standard of review" of a Rule 12(b)(6) motion.  Dkt. 37-36, p. 24.

Knight's attorney's handling of this situation is well past frustrating.  The October 9, 2019 Memorandum-Decision and Order specifically chastised plaintiff's attorney for this same meager defense.  *Knight*, 2019 WL 5067901, at *15.  The failure to include an amended complaint clarifying whether the references to slander and equal protection were intended to be causes of action was a particular sticking point.  *Id.*  Yet this Court now finds itself in

precisely the same position despite its strong condemnation of this exact behavior. The amended complaint has still utterly failed to include any claim amounting to slander or equal protection, and to whatever extent the amended complaint could be read so as to include those claims, those claims must be dismissed with prejudice.

### G. **SUPPLEMENTAL JURISDICTION.**

This Court still maintains supplemental jurisdiction over Knight's state law assault and battery and false imprisonment claims under 28 U.S.C. § 1367(a). *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) ("[F]ederal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution." (internal quotation marks omitted)). Because plaintiff's FMLA interference and retaliation claims have survived, it will not dismiss plaintiff's state law claims.

### H. **PLAINTIFF'S MOTION FOR LEAVE TO AMEND.**

Knight's attorney has also moved for leave to amend her complaint under Rule 15(a)(2). Under that Rule, a party cannot amend its complaint without the court's leave. Rule 15(a)(2). The court should, however, "freely give leave when justice so requires." *Id.* "Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal citation omitted).

Defendants again correctly note that Knight's attorney's cross-motion fails to comply with Local Rule 7.1(a)(4) for failing to provide a proposed amended complaint with a motion to amend. Plaintiff's attorney argues that he failed to comply with this rule because of time constraints. That excuse is less than mollifying. He was given a two-week extension on his

deadline to respond to defendants' motion, giving him a total time to respond of seven full weeks, and four days besides, from November 21, 2019 until January 13, 2020. The attorney's only reason for requesting the extension was that he had one other motion due on December 27, 2019. Dkt. 29.

Knight's attorney's first priority should have been adequately defending her claims as viable, this is true. But to rely entirely on a request to amend to salvage several claims for the second consecutive time, without providing an amended complaint to assess the sincerity of any of his hopes to maintain them, is far beyond the pale. Given plaintiff's attorney's inadequate showing thus far in this action, any attempted amendment would be futile. *Okoi v. El Al Israel Airlines*, 378 F. App'x 9, 12 (2d Cir. 2010). Moreover, at this point it is frustratingly apparent that plaintiff's attorney's tactics are aimed at causing delay in bad faith, with no sincere belief or intention to legitimately defend the amended complaint. *Ruotolo*, 514 F.3d at 191. Plaintiff's motion to amend her complaint will be denied.

## V.    **CONCLUSION**

By the grace of an exceptionally forgiving standard, Knight's claims under the FMLA continue forward despite defendants' best efforts. It is possible, and perhaps likely, that targeted discovery, or especially full discovery, will reveal plaintiff's claims under that statute to be baseless, in which case those claims could be reassessed on summary judgment. Nevertheless, it is improper to dispose of them at this juncture.

That said, Knight's attorney's attempt to defend her claims solely by requesting additional chances to amend her complaint is deeply troubling. The submissions in this case thus far have been unprofessional, disorganized, and candidly often nonsensical. That he could seriously believe that he would have an opportunity to amend the complaint for a second time given the sloppy arguments thus far strains belief. Should plaintiff wish for her

claims to survive summary judgment—indeed, for them to even be taken seriously—her arguments, evidence, and advocacy need to improve drastically and swiftly.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss under Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART;

2. Plaintiff's claims against the individual defendants in their official capacities are DISMISSED WITH PREJUDICE;

3. Plaintiff's Count I § 1983 due process claim is DISMISSED WITH PREJUDICE;

4. Plaintiff's Count III ADA discrimination and retaliation claims are DISMISSED WITH PREJUDICE;

5. Plaintiff's Count VI claim for conspiracy to harass and retaliate is DISMISSED WITH PREJUDICE;

6. Plaintiff's Count VII claim for aggravation of pre-existing mental health conditions is DISMISSED WITH PREJUDICE;

7. Defendants' motion to dismiss counts II, IV, and V is DENIED;

8. Plaintiff's Rule 15(a)(2) motion to amend is DENIED; and

9. Defendants shall file and serve an answer to counts:  (II) for both FMLA interference and retaliation against all defendants; (IV) for assault and battery against defendant Purdy; and (V) for false imprisonment against defendant Purdy on or before Monday, March 2, 2020.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  February 10, 2020
           Utica, New York.